UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| ASHLEY M. LAREAU, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 2:17-cv-81 |
| NORTHWESTERN MEDICAL CENTER, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Ashley Lareau claims employment discrimination on the basis of a disability. Her former employer, Northwestern Medical Center ("NMC"), denies the allegations and contends that Lareau was terminated from her job due to performance issues. NMC previously moved for summary judgment on all claims, and the Court denied the motion. NMC now seeks reconsideration of that ruling. For the reasons set forth below, the motion for reconsideration is **granted** in part and **denied** in part, and the Court's prior summary judgment ruling is **affirmed**.

I. Reconsideration Standard

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). Reconsideration may also be granted if the movant demonstrates an

"intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992)). A motion for reconsideration "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Assoc. Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

**II. Timeliness of NMC's Motion**

Before reaching the merits of NMC's motion for reconsideration, the Court must address Lareau's argument that the motion is untimely. Local Rule 7(c) provides that "a motion to reconsider a court order, other than one governed by Fed. R. Civ. P. 59 or 60, must be filed within 14 days from the date of the order." The Court's ruling on NMC's summary judgment motion was docketed on July 8, 2019. NMC filed its motion to reconsider on August 5, 2019. NMC submits that its motion is governed by Rule 60(a), that the 14-day deadline does not apply, and that strict adherence to a deadline would elevate form over important substance.

The Federal Rules of Civil Procedure do not recognize a motion for "reconsideration." *See Lopez v. Goodman*, 2013 WL

5309747, at *1 (W.D.N.Y. Sept. 20, 2013) (citing *Hamilton v. Williams*, 147 F.3d 367, 371 n.10 (5th Cir. 1998)). "Since the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, such a motion may be construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b)." *Hill v. Washburn*, 2013 WL 5962978, at *1 (W.D.N.Y. Nov. 7, 2013) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989)). The issue becomes more complicated when, as in this case, the reconsideration motion is filed after an interlocutory ruling rather than the sort of final judgment contemplated by Rules 59(e) and 60(b). *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60 (allowing relief from a "final judgment, order, or proceeding"). Rule 54(a) defines a judgment as "a decree and any order from which an appeal lies," Fed. R. Civ. P. 54(a), and an appeal generally does not lie after denial of a summary judgment motion. *See Davidson v. Chestnut*, 193 F.3d 144, 147 (2d Cir. 1999) (noting that a district court's denial of a motion for summary judgment is generally a non-appealable interlocutory order).

That said, Rule 54(b) allows that "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Accordingly, a district

3

court has "discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). As reflected in the standard for reconsideration, decisions considered under Rule 54(b) "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Id.* (quoting *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255). It is therefore within the Court's discretion to reconsider its Order, applying the reconsideration standard, notwithstanding the deadline set forth in the Local Rule. Here, the Court will exercise that discretion and turn to the merits of NMC's motion.

**III. NMC Claims a Change in the Law**

    **A.** *Natofsky v. City of New York*

The Second Circuit recently clarified that the legal standard in employment discrimination cases brought under the ADA is "but-for" causation. *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019) ("We conclude that 'on the basis of' in the ADA

4

requires a but-for causation standard."). Prior to *Natofsky*, the Circuit "applied a 'mixed-motive' test to ADA claims, 'under which disability [need only be] one motivating factor in [the employer's] adverse employment action but [need not be] its sole but-for cause.'" *Id.* at 346 (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336 (2d Cir. 2000)). Because this Court's summary judgment order found genuine issues of material fact on the question of whether "NMC was in fact motivated by unlawful discrimination," ECF No. 156 at 24, NMC submits that reconsideration under the "but-for" standard is required.

**B. Facts Supporting "But-For" Causation**

Having reviewed the record, the Court finds that even under the more exacting "but-for" standard NMC is not entitled to summary judgment. Again viewing the facts in the light most favorable to Lareau, her evidence shows that prior to her seizures she received positive performance reviews and pay raises based on merit. Once her seizures began and she alerted her supervisors about possible periods of medical leave, she was faced with attendance-related questions and placed on a punitive performance plan ("PIP"). And although a supervisor later stated in an email that most minimum requirements of the plan had been satisfied, Lareau was terminated shortly after the plan's conclusion.

Lareau contends that the cost of her medical care under NMC's self-insured program contributed to her placement on a PIP. NMC

5

argues that evidence of that allegation is unsupported by the record. Lareau was placed on a PIP on March 18, 2016, yet the medical records produced to Lareau showing her high (and increasing) medical costs were not received by NMC's Human Resources staff until after that date. ECF No. 132-31 at 91, 96, 122. The records do pre-date her termination. Consequently, while the cost of Lareau's care may be relevant to termination, it does not fully explain her placement on a PIP.

Other facts in the record, however, when viewed in Lareau's favor, provide support for her causation time-line with respect to the PIP. For example, Lareau's initial seizures occurred in January 2016, two months before the PIP. Lareau's husband alerted NMC that she had suffered seizures, and her supervisors knew that she might be needing time off and possibly even surgery in the coming months. The record also indicates that NMC's Human Resources department was closely monitoring medical bills. In an email dated January 19, 2016, Thomas Conley and Louise Rocheleau received an email providing detailed information about large medical claims. ECF No. 132-31 at 1. It is unclear whether the information was provided at the suggestion of NMC, or through the initiative of NMC's insurance broker, The Richards Group. *Id.* (noting that The Richards Group had "requested some follow up details," and commenting that the data will "give us a sense for what may be on going").

NMC also questions Lareau's claim that its failure to follow disciplinary protocol can be used as evidence of pretext. Specifically, NMC submits that because NMC's Corrective Action policy reserves the right to dispense of any step or steps in its disciplinary protocol, a failure to follow those steps cannot be used to show discrimination.[1] Lareau responds that NMC's reservation of rights merely makes clear that employees have no contractual rights to certain disciplinary steps, and can instead be fired at any time as their employment status is "at will."

It is well established that a court may look to "[t]he specific sequence of events leading up to the challenged decision," including "[d]epartures from the normal procedural sequence" when determining whether discrimination was a motivating factor. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *see also Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984) ("Departures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision."). Here, Lareau contends that NMC failed to follow its usual, documented

---

[1] NMC's Corrective Action policy provides it is "not a contract," and that the type of corrective action "will depend entirely on the particular facts and circumstances, and NMC reserves the right to omit, repeat or amend any of the corrective action options . . . and to take whatever action it deems appropriate at any time and in any order, including immediate termination of employment." ECF No. 132-18 at 6.

7

practice of providing the employee with written notice before implementing disciplinary action. The Court previously accepted this fact as favoring Lareau's discrimination claim at summary judgment, and NMC cites no new facts or controlling authority that the Court overlooked.

In a related argument, NMC critiques Lareau's reliance on the lack documentation of her alleged performance issues. The Court discounted that argument as carrying little weight, since pretext is the plaintiff's burden to prove and not the defendant's to disprove. ECF No. 156 at 25. This issue therefore does not require additional analysis upon reconsideration.

In sum, there remain genuine issues of material fact in dispute as to whether discrimination was the "but-for" cause of Lareau's termination. The Court **grants** the motion for reconsideration to the extent that NMC requests review under the "but-for" standard, but **denies** reconsideration insofar as NMC's arguments merely restate its previous positions and point to no new evidence, overlooked information, or clear error. Because a reasonable jury could conclude that NMC would not have terminated Lareau but for her disability, upon reconsideration the Court's prior summary judgment ruling is **affirmed.**

**IV. Failure to Accommodate**

NMC next argues that the Court erred with respect to Lareau's failure to accommodate claim. NMC's position is based on three

8

contentions: first, that Lareau only needed accommodations immediately after her seizures; second, that she failed to establish the existence of accommodations that would permit her to perform her job; and third, that Lareau conceded she was always able to perform the essential functions of her job. As Lareau notes in her opposition to reconsideration, these same arguments were largely raised in NMC's initial summary judgment briefing.

One of Lareau's reasonable accommodation claims is that her records highlight certain conditions, such as stress and sleep deprivation, that would make seizures more likely. Driving was also identified as a limitation. NMC argues that stress and sleep deprivation are not, by themselves, disabilities requiring accommodation. Stress and sleep deprivation are, however, conditions related to epilepsy. The ADA provides that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity *when active*." 42 U.S.C. § 12102(4)(D) (emphasis added). The cited accommodations—avoidance of stress and sleep deprivation—were intended to decrease the chance of epilepsy becoming active, and were therefore legitimately raised under the ADA.

NMC also argues that Lareau failed to identify a specific accommodation that would enable her to perform the essential functions of her job. The question of appropriate accommodations was raised, however, in a meeting between Lareau and Conley prior

9

to Lareau's firing. In fact, it was Conley who reportedly suggested requesting an accommodation. ECF No. 120-27 at 53. According to Lareau, she told Conley that she feared further retaliation and mistreatment if she submitted a request for accommodations, and Conley did not offer alternatives that would avoid the prospect of retaliation. *Id.* at 53-54. Viewing those facts in a light most favorable to Lareau, a reasonable jury could find that the employer's failure to address Lareau's concern violated her rights under the ADA.

NMC's final point with respect to reasonable accommodations is that Lareau conceded she was capable of performing the essential functions of her job without accommodation. This point was raised in NMC's prior briefing. In any event, although Lareau may have been able to find ways to function without any accommodations, her discussion with Conley suggests that accommodations may have been appropriate but were not requested due to her fear of retaliation. The Court therefore declines to find, as a matter of law, that no accommodations were necessary.

## V. Medical Confidentiality

NMC's final request for reconsideration focuses on Lareau's medical confidentiality claim. Again, this claim was addressed in the Court's prior ruling, and NMC has not identified any issues the Court overlooked. Instead, NMC submits that Lareau's claim is without merit because it is based upon conclusory and unsupported

10

allegations.

As the Court noted previously, Lareau claims that Conley improperly received information from The Richards Group about "large claims" incurred by individual employees. ECF No. 132-31 at 1. The parties dispute whether this information was obtained as a legitimate means of administering NMC's self-insured benefits plan, or was instead a search for employees with expensive disabilities. The emails in question focused on medical care claims in excess of $25,000. *Id.* at 51, 83, 89, 93, 116, 126, 129. Lareau's name appeared in each email as having claims exceeding $25,000, beginning in March 2016 and continuing through September 2016. *Id.* at 80, 86, 91, 96, 122, 126, 131. Given the nature of the emails and the data shared with NMC, a jury must determine whether the information was obtained for an unlawful purpose.

## Conclusion

For the reasons set forth above, NMC's motion for reconsideration (ECF No. 157) is **granted** in part and **denied** in part, and the Court's prior ruling is **affirmed.**

DATED at Burlington, in the District of Vermont, this 8th day of October, 2019.

/s/ William K. Sessions III<br>District Court Judge